IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID BLISS,<br><br>        Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY,<br><br>        Defendant. | 4:12CV3019<br><br>**MEMORANDUM AND ORDER** |

On the parties' respective Motions in Limine, (Filing Nos. 183 & 186),

IT IS ORDERED that the motions are granted in part and denied in part as follows:

### Defendant's Motions in Limine

1.  Any reference to or evidence regarding Plaintiff's claim of "negligent assignment."

Sustained. Plaintiff testified that he was not negligently assigned to the work he being performed when the injury occurred, and never specifically raised this allegation in his pleadings or the Rule 26(f) Report. See Filing No. 188-2 at CM/ECF p. 72.

2.  Reference to the size or financial condition of BNSF or the term "railroaded" or other similar terms.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 2, ¶ 2).

2

  3. Any reference to or evidence regarding Berkshire Hathaway and Warren Buffet.

  Sustained by agreement. (Filing No. 194, at CM/ECF p. 2, ¶ 3).

  4. Any reference to or evidence regarding the stressed or otherwise dire financial condition of plaintiff or his family following the claimed work injury.

  Sustained, except to the extent the Plaintiff claims this evidence supports his claim for compensatory damages (e.g., emotional distress damages arising from the accident), which may, in turn, open the door to discussing benefit payments received by the Plaintiff.

  5. Any reference to the difference in status, size and strength of the plaintiff as an individual and BNSF as a corporation.

  Sustained by agreement. (Filing No. 194, at CM/ECF p. 2, ¶ 5).

  6. Any statement asking the jurors to place themselves in the position of plaintiff and imagine his pain or emotions.

  Sustained.

  7. Any reference to the history, congressional intent and alleged remedial purposes of the Federal Employers' Liability Act ("FELA").

  Sustained. The court will instruct the jury regarding the applicable law.

8. Any statement or argument embellishing or inaccurately summarizing plaintiff's medical history.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 2, ¶ 8).

9. Any reference to or evidence regarding medical expenses paid by insurance provided to plaintiff by defendant pursuant to labor agreements between the carrier and plaintiff's union.

Sustained.

10. Any reference to or evidence regarding plaintiff's reputation for safety on the job or reputation as to character.

If necessary, the court's rulings on this topic will be made during trial and in accordance with the Federal Rules of Evidence. See F. R. Evid. Rule 404(a)(1) & 608.

11. Any statement as to what any physician, psychologist, psychiatrist or any other person practicing the healing arts, allegedly told plaintiff or plaintiff's witnesses as to the extent and nature of his examination, his alleged findings, disability or physical impairment, diagnosis or prognosis.

Overruled. But this information will not be mentioned during voir dire or opening statements.

12. Any reference to or evidence in the nature of "expert" testimony or opinions of any expert previously disclosed by plaintiff including those health care providers identified as non-retained experts, as well as Terry Cordray, Dr. Malcolm Cohen, and Dr. Daniel Ripa beyond those specific opinions disclosed in Plaintiff's

Disclosures under Rule 26(a)(2), Plaintiff's Amended Expert Disclosures, all medical records produced by plaintiff to BNSF, Plaintiff's Answers to Defendant's Interrogatories, any supplements served thereto including any supplemental written reports provided to counsel for BNSF, and all discovery depositions of said experts taken by counsel for defendant BNSF after said expert disclosures.

Sustained.

13.  Any testimony from Dr. Thomas Brooks regarding "his opinion on causation, Plaintiff's ability to return to work, or any work restrictions required by the plaintiff."

Sustained pursuant to this court's Memorandum and Order dated September 10, 2013, (Filing No. 151). See also Filing No. 194, at CM/ECF p. 3, ¶ 11).

14.  Strike the following trial testimony of Michael H. McGuire, M.D., taken on June 18, 2013:

a.  Testimony offering the opinion that plaintiff cannot return to work in his previous position as a carman because of his injuries.

b.  Testimony offering the opinion that plaintiff's February 3, 2011 work injury was the cause in whole or in part to his claimed spine injury and subsequent medical treatment.

Overruled as to both. Dr. McGuire opined that Plaintiff's combination of physical problems made it "particularly painful for him to do heavy labor" such as "jacking apart railroad cars to repair them." See Filing No. 188-4 at CM/ECF p. 29-30. Further,

sufficient foundation was provided to support Dr. McGuire's opinion that the February 3, 2011 injury caused the spine injury and the necessity for the subsequent medical treatment.  See Filing No. 188-4 at CM/ECF p. 19.

15.     Any reference to or evidence regarding accident or incident reports related to plaintiff's workplace incident on February 3, 2011.

Overruled.

16.     Any reference to or evidence regarding alternative tools previously used or those not available for use due to repair, namely an A-frame hoist or "press" also referred to as an A-frame ram.

Overruled.

17.     Any reference to or evidence regarding a July 1, 2011 Safety Issue Resolution Process ("SIRP") report or request or its resolution.

Overruled.  But this information will not be mentioned during voir dire or opening statements.

18.     Any reference to or evidence regarding any Job Safety Analysis ("JSA"), specifically JSAs for "Car Straightener- Behind Bldg. 181" and "Using Hydraulic Rams."

Overruled.  But this information will not be mentioned during voir dire or opening statements.

19. Any reference to or evidence regarding the alleged safety violation of superintendent Rick Stauffer during the reenactment of plaintiff's incident.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 10, ¶ 19).

20. Any reference to the termination of Fred Venneberg, including any evidence or testimony regarding his investigation hearing for a rules violation pursuant to the applicable Collective Bargaining Agreement, any appeals through grievance process pursuant to the Railway Labor Act and subsequent re-instatement to work.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 10, ¶ 20).

21. Any reference to or evidence regarding "two sets of rules on the railroad" implying BNSF craft employees and managers are held to different standards of conduct.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 11, ¶ 21).

22. Any reference to or evidence regarding the "long and faithful service rule" under the applicable Collective Bargaining Agreement.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 11, ¶ 21).

23. Any reference to or evidence regarding plaintiff being "tested" to see if plaintiff was capable of working as a carman after returning to work from medical leave and before his alleged injury on February 3, 2011.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 11, ¶ 22).

24. Any reference to or evidence regarding plaintiff being "an unwanted employee," "an accident waiting to happen" or similar statements and sentiments allegedly perceived or expressed after returning to work from medical leave and before his alleged injury on February 3, 2011.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 11, ¶ 24).

25. Any reference to or evidence relating to certain opinions or conclusions of BNSF employees or former BNSF employees who may have information concerning the allegations giving rise to this suit, more specifically opinions or conclusions as to what actions or conduct of the parties caused or contributed to cause the incident or plaintiff's alleged injuries.

Sustained as to the medical cause of the Bliss' re-herniation of his lumbar disc and the development of Failed Back Syndrome (other than by BNSF past and current employees qualified to render such opinions); otherwise overruled.

26. Improper questioning of jurors concerning the source of any damages payment should be prohibited including but not limited to questions directed to the jury panel, or arguments to the jury, as to whether they would answer an issue on damages in accordance with the evidence, regardless of who pays the damages or when they will be paid or whether they will ever be paid.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 11, ¶ 26).

27. Any reference to or evidence regarding general complaints and comments about the workplace or allegedly unsafe conditions that are not directly related to the specific incident of plaintiff's claims that have been alleged in this case, that have not

been established as a causative condition by a competent expert, and that were not previously disclosed during discovery.

    Sustained by agreement. (Filing No. 194, at CM/ECF p. 11, ¶ 27).

    28.    Any reference to or evidence, directly or indirectly, regarding any other claims, accidents, incidents, or lawsuits involving BNSF which plaintiff claims are substantially similar to the present suit without the Court first ruling on the relevancy, materiality and admissibility of such matters outside the presence of the jury.

    Sustained. The plaintiff may, however, request a threshold Rule 104 hearing outside the presence of the jury as to such evidence.

    29.    Any statement that the jury's verdict is plaintiff's sole remedy, only chance, or sole available source for damages or compensation.

    Sustained. The court will instruct the jury as to the applicable law.

    30.    Any reference to or evidence regarding this as a "compensation" case.

    The plaintiff may seek compensation, and may request to be compensated. But the plaintiff shall not explicitly or implicitly argue that this case is akin to a worker's compensation case or governed by that law.

    31.    Any reference or argument that the damage award in a FELA case is subject to federal income tax.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 12, ¶ 31).

32. Any evidence of or argument concerning plaintiff's gross wage loss as a measure of damages.

Overruled. Gross wage loss may be mentioned or discussed as providing the starting point in determining plaintiff's net wage loss.

33. Any reference to or testimony regarding plaintiff's claimed future wage loss or diminished earnings capacity based upon future wages as a BNSF carman.

Overruled.

34. Any reference to or testimony from plaintiff's vocational rehabilitation expert Terry Cordray that plaintiff would not be able to return to work but for his alleged February 3, 2011 work related injury and that plaintiff is "permanently disabled" and/or "permanently totally disabled."

Overruled.

35. Any reference to or testimony from plaintiff's retained economist Dr. Cohen regarding the lost value of plaintiff's railroad retirement benefits.

Overruled.

36. Any reference to inflation or the effect of inflation upon any award of damages.

Overruled.

37. Any reference to or evidence seeking prejudgment interest.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 12, ¶ 37).

38. Any statement by counsel expressing a personal opinion concerning the bona fides or credibility of BNSF's defenses or any statement personally vouching for the credibility of plaintiff or his witnesses.

Sustained as to personally vouching for the credibility of witnesses or the plaintiff; otherwise overruled.

39. Any reference to or evidence regarding any implication that BNSF or its attorneys have not fully complied with or otherwise properly and fully responded to any Interrogatories and Requests for Production of Documents and supplements thereto and the rules governing discovery or the implication that BNSF or its attorneys have violated any Order of this Court.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 12, ¶ 39).

40. Any reference to the filing of this Trial Motion in Limine or to any ruling by the Court in response to this Motion.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 12, ¶ 40).

41. Any reference to the following general matters:

a. Testimony of witnesses not previously identified as persons with knowledge of relevant facts or any testimony in the nature of opinions or "expert testimony" of persons not previously identified and disclosed in discovery responses as expert witnesses.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 12, ¶ 41(a)).

b. Requests of BNSF witnesses or BNSF counsel to stipulate to either the admissibility of any evidence or stipulate to any facts or matters in front of the jury.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 12, ¶ 41(b)).

c. Questions directed to BNSF counsel in front of the jury.

Sustained by agreement. (Filing No. 194, at CM/ECF p. 12, ¶ 41(c)).

d. Demands or requests before the jury for matters found or contained in BNSF's file which would include statements, pleadings, or other documents, or from making any other request during the course of the trial and in the presence of the jury.

Sustained.

e. Any testimony given over objections in depositions, including video depositions, or discovery responses without a ruling thereon by the Court being previously made.

>Sustained, except as to testimony or answers provided in response to questions for which the objection was later withdrawn.

f. Reference to any settlement discussions, documents and statements made therein. Fed. R. Evid. 408.

>Sustained by agreement. (Filing No. 194, at CM/ECF p. 12, ¶ 41(f)).

g. Any reference relating to the following privileges claimed by BNSF attorneys in this case:

>1) Attorney-Client Privilege: Any matters or communications that have transacted between the BNSF attorneys, both past and present, and BNSF.

>2) Work Product Privilege: Any matters involving the investigation and/or work product of BNSF and/or BNSF's attorneys. 3) Privileged Communications: Any evidence of any conversations or communications between or among BNSF, its agents, servants, or representatives.

>Sustained as to all timely raised objections based on the attorney-client privilege or the work product doctrine.

### Plaintiff's Motion in Limine.

1. Defendant should be precluded from making any mention or insinuation in front of the jury through argument or attempts to introduce evidence that Plaintiff was terminated from or left BNSF employment.

Overruled.  But defendant's <u>termination</u> will not be mentioned.

2.  Defendant should be precluded from making any mention in front of the jury through argument or attempts to introduce evidence that Plaintiff's union brought a grievance-arbitration claim pursuant to the Railway Labor Act.

Overruled.

3.  Defendant should be precluded from making any mention in front of the jury through argument or attempts to introduce evidence that Plaintiff has received disability, applied for disability, medical or other collateral source benefits.

Overruled.

4.  Any testimony regarding the Harriman Award is inadmissible because it is irrelevant and not probative of any issue on this lawsuit.

If necessary, the court's rulings on this topic will be made during trial and in accordance with the Federal Rules of Evidence.  See F. R. Evid. 404(a)(1) & 608.

5.  Any testimony regarding Plaintiff's wife's income or business or Bliss's shareholder status.

Overruled.

6.  Defendant should not be permitted to charge Plaintiff with assumption of risk under the guise of contributory negligence or any other theory.

13

Sustained. However, if supported by the evidence, the defendant will be permitted to argue, and the jury will receive an instruction on defendant's contributory negligence defense.

7.     BNSF should be precluded from referring to medical conditions, to prior injuries and/or prior settlements with the railroad unrelated to Plaintiff's spine which are the only part of Plaintiff's anatomy placed in controversy in this lawsuit.

Overruled

Dated this 15th day of May, 2014.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge